IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHERMAN ANDERSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THOMPSON CREEK MINING CO., a Colorado Corporation doing business in Idaho; and PSYCHEMEDICS CORPORATION, a Delaware Corporation doing business in Idaho,<br><br>　　　　Defendants. | Case No.  4:11-CV-639-BLW<br><br>**MEMORANDUM DECISION** |

## INTRODUCTION

The Court has before it cross-motions for summary judgment. The Court heard oral argument on May 1, 2013, and took the motions under advisement. For the reasons explained below, the Court will deny plaintiff's motion and grant defendant's motion.

## LITIGATION BACKGROUND

Plaintiff Anderson was fired by defendant Thompson Creek Mining Co. following a positive drug test. Anderson claims that Thompson Creek's drug testing procedures, and its decision to fire him based on the results of those procedures, violated his rights under the Idaho Private Employer Alcohol and Drug-Free Workplace Act, I.C. § 72-1701, *et seq*. (the Act). His complaint contains two counts, the first alleging that Thompson Creek violated the Act and the second alleging that he was wrongfully terminated in

**Memorandum Decision - 1**

contravention of the public policy established by the Act.

The parties have filed cross-motions for summary judgment addressing both claims in Anderson's complaint. The Court will examine each claim.

## ANALYSIS

### Count One – Violation of the Act

Anderson alleges that the Act provides a private right of action for an employee fired for a positive drug test when the employer fails to follow the provisions of the Act in conducting the test. To resolve this claim, the Court must examine the Act in detail.

The Act establishes drug and alcohol testing guidelines for employers, *Idaho Code* § 72-1701, and sets out detailed provisions for the taking of samples and the testing itself. *Id.* at § 72-1704. For example, the Act requires that the samples be (1) collected with "due regard to the privacy of the individual being tested," (2) labeled to "preclude the possibility of mislabeling," (3) handled with "reasonable chain-of-custody and confidentiality procedures" to avoid "contamination," and (4) tested in a way that conforms to "scientifically accepted analytical methods and procedures." *Id.* at (1)-(6).

Before any test can be used as a basis for action by an employer, there must be a "mandatory second or additional test of the same sample that is conducted by a laboratory utilizing a chromatographic technique such as gas chromatography-mass spectrometry or another comparable reliable analytical method." *Id.* at (7). The Act specifically protects employees who have tested positive, giving them the right to request a retest of the same sample within seven days. *Id.* at § 72-1706(2). If the retest is negative, the employer

"will reimburse the cost of the retest, compensate the employee for his time if suspended without pay, or if terminated solely because of the positive test, the employee shall be reinstated with back pay." *Id*. The employer must have a written policy complying with the Act and containing a notification to employees that "violation of the policy may result in termination due to misconduct." *Idaho Code* § 72-1705.

These provisions are all "voluntary." *Id*. at § 72-1701(1). To promote compliance, the Act offers four principal benefits to an employer who follows its provisions. First, compliance could reduce taxes for the employer. An employee who is fired for a positive test that complies with the Act will be presumed to have committed "misconduct" and will not receive unemployment benefits, thereby saving the employer from an increase in his unemployment tax. *Id.* at § 72-1701(1); *Desilet v. Glass Doctor*, 132 P.2d 412, 415-16 (Id.Sup.Ct. 2006).

Second, compliance provides protection from lawsuits. The Act contains a "safe harbor" provision for employers, protecting them from being sued by workers who were fired as a result of a positive drug test, so long as the test complied with the Act, unless the test result was false and the employer knew or clearly should have known the result was false. *Id*. at § 72-1711(1).

Third, compliance saves the employer money on his worker's compensation insurance premiums. *Id*. at § 72-1716. And fourth, compliance renders employers eligible to contract for State construction projects. *Id*. at § 72-1717.

The Act does not expressly provide for any private right of action by employees

**Memorandum Decision - 3**

who were fired for testing positive.[1]  Anderson argues, however, that the Act contains an implied action.

No Idaho court has addressed this issue.  The Court must determine how the Idaho Supreme Court would decide the issue.  *McKown v. Simon Property* Group Inc., 689 F.3d 1086 (9th Cir. 2012).  In the past, when considering whether a statute created a private right of action, the Idaho Supreme Court has relied upon the Restatement (Second) of Torts § 874A, which states as follows:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

*White v. Unigard Mut. Ins. Co.,* 730 P.2d 1014, 1021 (Id.Sup.Ct. 1986).  Under this Restatement provision, the threshold requirement for implying a right of action is a finding that the statute "proscrib[es] or requir[es] certain conduct."  The Act does neither; it neither proscribes non-compliance nor requires compliance.[2]  Compliance with the Act is "voluntary" by its very terms.  An employer gains substantial benefits from following

---

[1]  If the Idaho Legislature had wanted to expressly provide for civil remedies, it would have been easy to do so.  For example, Oklahoma passed its "Standards for Workplace Drug and Alcohol Testing Act" in 1993, about four years prior to Idaho's Act.  Oklahoma's law  expressly authorizes civil actions by "any person aggrieved by a willful violation" of its provisions.  *See* 40 Okl.St.Ann. § 563 (discussed in *Williams v United Parcel Service Inc.,* 527 F.3d 1135 (10th Cir. 2008)).

[2]  There is a provision that requires employers to comply with federal law – the Americans With Disabilities Act, 42 U.S.C. § 12101.  *See Idaho Code* § 72-1702(1).  Anderson makes no claim under this provision.

**Memorandum Decision - 4**

the Act – as discussed above – but is free to choose to ignore the Act and forego those benefits.  The plain wording of the Act shows that the Idaho Legislature was promoting rather than mandating compliance.  To read an implied right of action into the Act would be to impose a mandatory duty on employers to comply with its terms.  The Court refuses to rewrite the statute in that manner.

Anderson points out that the Idaho Legislature's Statement of Purpose states that the Act "provides testing guidelines that protect the rights of employees, by insuring that the employer's testing program is conducted in a reasonable manner and is scientifically valid."  *See Statement of Purpose RS 06574 (S 1042)*.  This shows, Anderson argues, an intent to protect the rights of employees.  The Court agrees.  But the protection was not accomplished by making the Act mandatory; it was accomplished by granting benefits to employers to motivate them to voluntarily confer certain rights on employees.

This can be seen clearly in other paragraphs of the Statement of Purpose.  For example, one such paragraph states that "[t]he provisions of this bill do not mandate drug and alcohol testing, but provide guidelines and legal benefits to those employers who have a need to create such a program."  *Id*.  Another paragraph states that "[a]ll employers . . . may choose to have a Drug-Free Workplace program." *See Statement of Purpose RS 12990 (S 1119)*.  These Statements align with the wording of the Act itself that its provisions are "voluntary" for employers.  The Court would ignore this language if it adopted a right of action for non-compliance, which would make the Act mandatory on employers.

**Memorandum Decision - 5**

For all these reasons, the Court finds that if faced with the issue, the Idaho Supreme Court would hold that there is no implied right of action in the Act. Accordingly, Anderson's claim under the Act, contained in Count One of his Second Amended Complaint, must be dismissed as a matter of law.

**Count Two – Wrongful Termination in Violation of Public Policy**

Anderson was an at-will employee, and both sides agree that he can be fired for any reason, except for one that contravenes public policy. In Count Two, Anderson claims that the Act establishes a public policy that its provisions be followed, and that his firing based on a test that did not comply with the Act contravenes Idaho's public policy. But to judicially authorize this claim, after finding that the Idaho Legislature authorized no direct claim under the Act, would be to "judicially admit at the back door that which has been legislatively turned away at the front door." *Laird v. Nelms*, 406 U.S. 797, 802 (1972). This claim must likewise be dismissed.

**Conclusion**

For all these reasons, the Court will grant the motion for summary judgment filed by Thompson Creek Mining, and deny the motion filed by Anderson. The only other defendant, Psychemedics Corporation, was previously dismissed by stipulation. *See Order (Dkt. No. 35)*. Thus, all claims have been resolved and the Court will enter a separate Judgment as required by Rule 58(a).[3]

---

[3] This result makes it unnecessary to resolve the issues with the drug testing raised by the affidavit of Robert Swotinsky, *see Affidavit of Swotinsky (Dkt. No. 47)*, and therefore renders moot the motion to strike that affidavit filed by Thompson Creek. *See Motion (Dkt. No. 51)*.

**Memorandum Decision - 6**

DATED: **May 2, 2013**



B. LYNN WINMILL
Chief Judge
United States District Court

**Memorandum Decision - 7**